SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Craig Chiaccheri v. Zurich American Insurance Company** (A-9-25) (090943)

**Argued March 31, 2026 -- Decided August 6, 2026**

**JUSTICE PATTERSON, writing for a unanimous Court.**

The Court answers two certified questions posed by the Third Circuit. Both questions relate to N.J.S.A. 17:28-1.1(f) and its requirements for underinsured motorist (UIM) coverage in a commercial motor vehicle policy.

In the underlying matter, Craig Chiaccheri was injured in a motor vehicle accident while driving a vehicle owned by his employer and insured under a policy issued by Zurich American Insurance Company (Zurich). That policy had a $2,000,000 coverage limit for bodily injury and a $15,000 UIM coverage limit. The driver at fault in the collision with Chiaccheri had a $100,000 third-party liability insurance coverage limit. Because that exceeded the $15,000 UIM limit of the Zurich policy, Zurich denied Chiaccheri's UIM claim.

Chiaccheri brought suit, seeking "reformation of the policy to provide $2,000,000 in UIM coverage" and arguing that "(1) the policy's UIM limitations violated the requirement of N.J.S.A. 17:28-1.1(f) that unnamed insured employees be afforded 'the maximum . . . underinsured motorist coverage available under the policy,' so, relatedly, (2) the Zurich policy was also void as against public policy." The United States District Court granted Zurich's motion for summary judgment. Chiaccheri appealed to the Third Circuit.

As relevant to the certified questions, N.J.S.A. 17:28-1.1(f) provides that

> [a] motor vehicle liability policy . . . shall not provide less uninsured or underinsured motorist coverage for an individual employed by the corporate or business entity than the coverage provided to the named insured under the policy. A policy that names a corporate or business entity as a named insured shall be deemed to provide the maximum uninsured or underinsured motorist coverage available under the policy to an individual employed by the corporate or business entity . . . .

1

In its first certified question, the Third Circuit requests that the Court determine "the 'maximum . . . [UIM] coverage available under the policy' that must be provided to 'an individual employed by the corporate or business entity.'"  In the second certified question, the Third Circuit inquires whether "endorsements limiting [UIM] coverage to an amount less than the general third-party liability coverage limit under the same policy" violate N.J.S.A. 17:28-1.1(f) or are otherwise contrary to public policy.  The Court accepted the questions as certified.  262 N.J. 68 (2025).

**HELD:**      *As to the first certified question, the Court concludes that under N.J.S.A. 17:28-1.1(f), the maximum UIM coverage "available under the policy" that must be provided to "an individual employed by the corporate or business entity" is coverage up to the UIM coverage limit that the corporate or business entity selected under the policy for the named insured, not UIM coverage up to the general third-party liability coverage limit under the policy.

*As to the second certified question, the Court holds that an endorsement in a motor vehicle liability policy limiting UIM coverage to an amount less than the general third-party liability coverage limit under the same policy does not violate either N.J.S.A. 17:28-1.1(f) or public policy, provided that (1) the UIM coverage available to the employee under the policy meets all applicable requirements of N.J.S.A. 17:28-1.1(a) and (b); and (2) under the endorsement, the UIM coverage available to the named insured and the UIM coverage available to employees are subject to the same limits in accordance with N.J.S.A. 17:28-1.1(f).

1.  The Court reviews the current language and legislative history of N.J.S.A. 17:28-1.1, including a significant amendment in 2007 following the Court's enforcement of a "step-down" provision in Pinto v. New Jersey Manufacturers Insurance Co., 183 N.J. 405 (2005).  That step-down provision in the employer's auto policy lowered the UIM limit for employees from the limit available to the policy's named insureds to the respective limits available under the employees' personal policies.  In the wake of Pinto, the Legislature enacted the provision at the heart of this matter, N.J.S.A. 17:28-1.1(f).  A legislative statement explained that the amendment "reverses the effect of the Pinto decision by prohibiting step-down provisions in these policies" and "expressly provides that a policy that names a corporate or business entity as a named insured shall be deemed to provide the maximum uninsured or underinsured motorist coverage available under that particular policy to any individual employed by the corporate or business entity."  In James v. New Jersey Manufacturers Insurance Co., the Court explained, in deciding a retroactivity issue, that N.J.S.A. 17:28-1.1(f) mandates that "[i]f the corporation or the business entity is the only named insured" of a commercial automobile policy, "then employees of that entity must receive the maximum available amount of UM/UIM coverage by operation of law."  216 N.J. 552, 556-58 (2014).  (pp. 15-19)

2

2.  In response to the Third Circuit's first certified question, the Court construes N.J.S.A. 17:28-1.1(f) in tandem with N.J.S.A. 17:28-1.1(a), which mandates that commercial auto policies provide UIM coverage that meets statutory minimums, and N.J.S.A. 17:28-1.1(b), which requires an insurer to offer UIM coverage up to "the insured's motor vehicle liability policy limits for bodily injury and property damage."  Considered together, N.J.S.A. 17:28-1.1(a) and (b) underscore a distinction between "the insured's motor vehicle liability policy limits for bodily injury and property damage" -- the policy's third-party liability limits -- and the limits on first-party UIM coverage.  Those are separate policy provisions that serve different purposes.  The Legislature could have required that employers purchase UIM coverage at limits equal to their third-party policy limits for personal injury and property damage.  It did not do so.  And nothing in N.J.S.A. 17:28-1.1(f)'s first sentence suggests that the Legislature intended that UIM coverage limits in a commercial policy equal that policy's third-party liability limits.  (pp. 19-22)

3.  As the Third Circuit noted, the parties to this matter dispute the meaning of N.J.S.A. 17:28-1.1(f)'s second sentence.  According to Chiaccheri, the phrase the Court used in James -- the "maximum available amount of UM/UIM coverage by operation of law" -- should be read to denote the maximum UIM coverage that the corporate or business entity could have purchased under N.J.S.A. 17:28-1.1(f), not the amount of UIM coverage that the corporate or business entity actually chose. That construction contravenes the statute's plain language.  N.J.S.A. 17:28-1.1(f) mandates parity between the UIM coverage provided to the named insured and the UIM coverage provided to the employee -- not parity between the UIM coverage provided to an employee and the third-party liability coverage limits set forth in the policy.  Accordingly, based on N.J.S.A. 17:28-1.1(f)'s plain language, the maximum UIM coverage "available under the policy" that must be provided to "an individual employed by the corporate or business entity" is coverage up to the UIM coverage limit that the corporate or business entity selected under the policy for the named insured, not UIM coverage up to the general third-party liability coverage limit under the policy.  If the corporate or business entity has purchased UIM coverage that equals the policy's third-party liability limit -- as N.J.S.A. 17:28-1.1(b) allows but does not require -- then the named insured and an employee are both entitled to that higher level of UIM coverage.  If the corporate or business entity has purchased a lower level of UIM coverage that complies with N.J.S.A. 17:28-1.1(a)'s mandatory minimums, then the named insured and an employee are both entitled to that lower level of UIM coverage.  (pp. 22-26)

4.  Turning to the Third Circuit's second certified question, the Court concludes that an endorsement in a motor vehicle liability policy limiting UIM coverage to an amount less than the general third-party liability coverage limit under the same policy does not violate N.J.S.A. 17:28-1.1(f), provided that (1) the UIM coverage available to the employee under the policy meets all applicable requirements of

3

N.J.S.A. 17:28-1.1(a) and (b); and (2) under the endorsement, the UIM coverage available to the named insured and the UIM coverage available to employees are subject to the same limits in accordance with N.J.S.A. 17:28-1.1(f). The Court also finds that endorsements limiting underinsured motorist coverage to an amount less than the general third-party liability coverage limit under the same policy are not contrary to public policy, provided that the same two conditions are met. The Court reaches that determination based on the statutory text and legislative history of N.J.S.A. 17:28-1.1, which are the relevant sources of public policy here. (pp. 26-29)

5. The Court notes that the Legislature has the authority to amend N.J.S.A. 17:28-1.1 to clarify its intent, should it decide to do so. (p. 29)

**CHIEF JUSTICE RABNER and JUSTICES PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PATTERSON's opinion.**

4

Craig Chiaccheri,

Plaintiff-Appellant,

v.

Zurich American Insurance Company,

Defendant-Respondent.

On certification of questions of law from the United
States Court of Appeals for the Third Circuit.

| Argued | Decided |
|--------|---------|
| March 31, 2026 | August 6, 2026 |

Matthew G. Bonanno argued the cause for appellant
(Rebenack, Aronow & Mascolo, attorneys; Matthew G.
Bonanno, of counsel and on the briefs).

Louis A. Bové argued the cause for respondent (Bodell
Bové, attorneys; Louis A. Bové and Robert D. Fischer,
on the brief).

Ryan M. Savercool argued the cause for amicus curiae
New Jersey Defense Association (McCarter & English,
attorneys; Christopher A. Rojao, of counsel, and Ryan M.
Savercool and Sofia S. Camara, on the brief).

Elizabeth R. Leong submitted a brief on behalf of amici
curiae Insurance Council of New Jersey and American
Property Casualty Insurance Association (Robinson &
Cole, attorneys; Elizabeth R. Leong, on the brief).

Pursuant to Rule 2:12A-7, this Court answers two certified questions posed by the United States Court of Appeals for the Third Circuit in an insurance coverage appeal.

The Third Circuit asks that we interpret N.J.S.A. 17:28-1.1(f), a statute that governs certain motor vehicle liability policies "issued in this State to a corporate or business entity with respect to any motor vehicle registered or principally garaged in this State," as it applies to underinsured motorist (UIM) coverage in a commercial motor vehicle policy. UIM coverage "provides coverage to the policyholder" if the policyholder "suffers personal injury or property damage caused by a motorist's negligent operation of a vehicle and the negligent motorist's liability insurance is insufficient to reimburse the policyholder's damages." Orientale v. Jennings, 239 N.J. 569, 576 n.1 (2019).

N.J.S.A. 17:28-1.1(f) bars a motor vehicle liability policy within the statutory description from providing "less uninsured or underinsured motorist coverage for an individual employed by the corporate or business entity than the coverage provided to the named insured under the policy." It deems a policy "that names a corporate or business entity as a named insured" to provide the maximum UIM coverage "available under the policy" to an

2

individual employed by the corporate or business entity, "regardless of whether the individual is an additional named insured under that policy or is a named insured or is covered under any other policy providing uninsured or underinsured motorist coverage." N.J.S.A. 17:28-1.1(f).

In its first certified question, the Third Circuit requests that we determine "what is the 'maximum . . . [UIM] coverage available under the policy' that must be provided to 'an individual employed by the corporate or business entity.'" We conclude that under N.J.S.A. 17:28-1.1(f), the maximum UIM coverage "available under the policy" that must be provided to "an individual employed by the corporate or business entity" is coverage up to the UIM coverage limit that the corporate or business entity selected under the policy for the named insured, not UIM coverage up to the general third-party liability coverage limit under the policy.

In the second certified question, the Third Circuit inquires whether "endorsements limiting underinsured motorist coverage to an amount less than the general third-party liability coverage limit under the same policy" violate N.J.S.A. 17:28-1.1(f) or are otherwise contrary to public policy. We hold that an endorsement in a motor vehicle liability policy limiting UIM coverage to an amount less than the general third-party liability coverage limit under the same policy does not violate either N.J.S.A. 17:28-1.1(f) or public policy, provided

3

that (1) the UIM coverage available to the employee under the policy meets all applicable requirements of N.J.S.A. 17:28-1.1(a) and (b); and (2) under the endorsement, the UIM coverage available to the named insured and the UIM coverage available to employees are subject to the same limits in accordance with N.J.S.A. 17:28-1.1(f).

I.

We summarize the facts and procedural history of the underlying matter based on the Third Circuit's petition for certification of questions of law dated July 14, 2025.

A.

In 2022, Craig Chiaccheri was injured in a motor vehicle accident while driving a vehicle owned by his employer, the TJX Companies, Inc. (TJX). The vehicle that Chiaccheri was driving at the time of the accident was insured under a policy issued by Zurich American Insurance Company (Zurich). The policy provided for $2,000,000 in general bodily injury liability coverage, and it included an endorsement written by Zurich and accepted by TJX's representatives that limited UIM coverage to $15,000 per person and $30,000 per accident.

The driver at fault in the collision, Harvey Gonzalez, was insured under a motor vehicle liability policy with a limit of $100,000 in third-party liability

4

insurance coverage.  In settlement negotiations, Gonzalez's insurer offered Chiaccheri $100,000 to resolve his claims against Gonzalez.  Chiaccheri accepted that offer and settled his claim against Gonzalez.

Chiaccheri then sought UIM coverage under TJX's Zurich policy. Zurich advised Chiaccheri that because Gonzalez's insurance policy limit of $100,000 exceeded the Zurich policy's UIM limit of $15,000, Gonzalez was not considered an underinsured motorist.  Chiaccheri and Zurich were unable to resolve their coverage dispute.

B.

Chiaccheri filed an insurance coverage action against Zurich in the Superior Court of New Jersey.  The action was removed to the United States District Court for the District of New Jersey.

In its petition for certification, the Third Circuit described Chiaccheri's allegations relevant to this matter to be "(1) the policy's UIM limitations violated the requirement of N.J.S.A. 17:28-1.1(f) that unnamed insured employees be afforded 'the maximum . . . underinsured motorist coverage available under the policy,' so, relatedly, (2) the Zurich policy was also void as against public policy."  As the Third Circuit explained, Chiaccheri sought "reformation of the policy to provide $2,000,000 in UIM coverage -- the same amount as the policy's bodily-injury coverage limit."

5

Applying the substantive law of New Jersey in accordance with Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938), the United States District Court granted Zurich's motion for summary judgment. Among other rulings, the District Court held that the Zurich policy does not violate N.J.S.A. 17:28-1.1(f) and is not void as against public policy. Chiaccheri appealed the District Court's judgment to the Third Circuit.

On July 14, 2025, in accordance with Third Circuit Local Appellate Rule 110.1 and Rule 2:12A, the Third Circuit transmitted its petition for certification to this Court. The Third Circuit advised the Court that this case meets the criteria of Rule 2:12A-1, which provides that this Court "may answer a question of law certified to it by the United States Court of Appeals for the Third Circuit, if the answer may be determinative of an issue in litigation pending in the Third Circuit and there is no controlling appellate decision, constitutional provision, or statute in this State."

The Third Circuit accordingly certified the following questions of law:

> 1. With respect to a "motor vehicle liability policy . . . that names a corporate or business entity as a named insured" under N.J.S.A. 17:28-1.1(f), what is the "maximum . . . underinsured motorist coverage available under the policy" that must be provided to "an individual employed by the corporate or business entity"?
>
> 2. Are endorsements limiting underinsured motorist coverage to an amount less than the general third-

6

party liability coverage limit under the same policy in violation of N.J.S.A. 17:28-1.1(f) or otherwise contrary to public policy?

On October 16, 2025, we accepted the questions as certified. 262 N.J. 68 (2025).

The organizations that are participating as amici curiae in the federal proceedings in this matter, the New Jersey Defense Association (NJDA), and the Insurance Council of New Jersey (ICNJ) and the American Property Casualty Insurance Association (APCIA) (jointly represented), appeared as amici curiae before this Court.

## II.

Relying on this Court's opinion in <u>James v. New Jersey Manufacturers Insurance Co.</u>, 216 N.J. 552, 561-75 (2014), Chiaccheri construes N.J.S.A. 17:28-1.1(f) to entitle an employee to UIM coverage up to "the insured's bodily injury limits elected on any given automobile policy." He contends that N.J.S.A. 17:28-1.1(f)'s "notwithstanding" clause reflects the Legislature's intent that the provision's requirement of maximum UIM coverage for employees overrides an employer's election of a lower UIM coverage limit under subsection (b) of the same statute, and that a contrary construction of subsection (f) would render the provision's second sentence surplusage. Chiaccheri asserts that Zurich's UIM endorsement, whose UIM coverage

7

limits do not match the general liability limits of the policy, not only violates N.J.S.A. 17:28-1.1(f) but is void as against public policy.

Also invoking James, 216 N.J. at 570-71, Zurich asserts that neither the plain text of N.J.S.A. 17:28-1.1(f) nor its legislative history supports Chiaccheri's assertion that the UIM coverage available to employees must match the policy's third-party liability limits. It contends that instead, the phrase "maximum . . . underinsured motorist coverage available under the policy" refers to the UIM limits that the corporate or business entity has selected for its motor vehicle liability policy. Zurich argues that a UIM endorsement incorporating limits selected by the policyholder that complies with N.J.S.A. 17:28-1.1(a)'s mandatory minimum UIM coverage is consistent with public policy if it contains no unlawful step-down provision.

NJDA supports Zurich's interpretation of N.J.S.A. 17:28-1.1(f)'s plain text and legislative history, and observes that if the Legislature intends to mandate that UIM limits match general liability limits in commercial motor vehicle policies, it can achieve that result by amending the statute.

ICNJ and APCIA assert that the Legislature did not intend to constrain the insurance coverage options available to businesses, and that if the Court were to accept Chiaccheri's interpretation of N.J.S.A. 17:28-1.1(f), that

8

decision would have substantial adverse commercial and public policy consequences.

III.

We begin with the current statutory language of the three provisions directly relevant to the Third Circuit's questions: N.J.S.A. 17:28-1.1(a), (b), and (f).

> a. Except for a basic automobile insurance policy, no motor vehicle liability policy or renewal of such policy of insurance, including a standard liability policy for an automobile as defined in [N.J.S.A. 39:6A-2], insuring against loss resulting from liability imposed by law for bodily injury or death, sustained by any person arising out of the ownership, maintenance or use of a motor vehicle, shall be issued in this State with respect to any motor vehicle registered or principally garaged in this State unless it includes coverage in limits for bodily injury or death as follows:
>
> > (1) an amount or limit of $15,000 for plans issued or renewed prior to January 1, 2023, $25,000 for plans issued or renewed on or after January 1, 2023 but prior to January 1, 2026, and $35,000 for plans issued or renewed on or after January 1, 2026, exclusive of interest and costs, on account of injury to, or death of, one person, in any one accident, and
> >
> > (2) an amount or limit, subject to such limit for any one person so injured or killed, of $30,000 for plans issued or renewed prior to January 1, 2023, $50,000 for plans issued or renewed on or after January 1, 2023 but prior to January 1, 2026, and $70,000 for plans issued or renewed on or after January 1, 2026, exclusive of interest and

9

costs, on account of injury to or death of more than one person, in any one accident, under provisions approved by the Commissioner of Banking and Insurance, for payment of all or part of the sums which the insured or his legal representative shall be legally entitled to recover as damages from the operator or owner of an uninsured motor vehicle, underinsured motor vehicle, or hit and run motor vehicle, as defined in [N.J.S.A. 39:6-78], because of bodily injury, sickness or disease, including death resulting therefrom, sustained by the insured, caused by accident and arising out of the ownership, maintenance, operation or use of such uninsured, underinsured or hit and run motor vehicle anywhere within the United States or Canada; except that uninsured motorist coverage shall provide that in order to recover for non-economic loss, as defined in [N.J.S.A. 39:6A-2], for accidents to which the benefits of [N.J.S.A. 39:6A-4] of that act apply, the tort option elected pursuant to [N.J.S.A. 39:6A-8] of that act shall apply to that injured person.

All motor vehicle liability policies, except basic automobile insurance policies, shall also include coverage for the payment of all or part of the sums which persons insured thereunder shall be legally entitled to recover as damages from owners or operators of uninsured and underinsured motor vehicles, other than hit and run motor vehicles, because of injury to or destruction to the personal property of such insured, with a limit in the aggregate for all insurers involved in any one accident of $25,000 for plans issued or renewed on or after January 1, 2023, and subject, for each insured, to an exclusion of the first $500.00 of such damages.

b.  Uninsured and underinsured motorist coverage shall be provided, as an option by an insurer to the named

insured electing a standard automobile insurance policy, up to at least the following limits:  $250,000.00 each person and $500,000.00 each accident for bodily injury; $100,000.00 each accident for property damage or $500,000.00 single limit, subject to an exclusion of the first $500.00 of such damage to property for each accident, except that the limits for uninsured and underinsured motorist coverage shall not exceed the insured's motor vehicle liability policy limits for bodily injury and property damage, respectively.  Rates for uninsured and underinsured motorist coverage for the same limits shall, for each filer, be uniform on a Statewide basis without regard to classification or territory.

. . . .

f.  Notwithstanding the provisions of this section or any other law to the contrary, a motor vehicle liability policy or renewal of such policy of insurance, insuring against loss resulting from liability imposed by law for bodily injury or death, sustained by any person arising out of the ownership, maintenance or use of a motor vehicle, issued in this State to a corporate or business entity with respect to any motor vehicle registered or principally garaged in this State, shall not provide less uninsured or underinsured motorist coverage for an individual employed by the corporate or business entity than the coverage provided to the named insured under the policy.  A policy that names a corporate or business entity as a named insured shall be deemed to provide the maximum uninsured or underinsured motorist coverage available under the policy to an individual employed by the corporate or business entity, regardless of whether the individual is an additional named insured under that policy or is a named insured or is covered under any other policy providing uninsured or underinsured motorist coverage.

[N.J.S.A. 17:28-1.1(a), (b), (f).]

11

Those provisions are the product of legislative amendments over several decades.

The original version of N.J.S.A. 17:28-1.1, enacted in 1968 to "provide greater protection for the victims of uninsured motorists," required uninsured motorist (UM) coverage up to specified limits, but did not address UIM coverage. L. 1968, c. 385. In a 1972 amendment, the Legislature mandated that automobile liability policies within the statutory description, in addition to other requirements imposed by the statute, "shall also include" UM coverage up to specified limits. L. 1972, c. 204.

The Legislature addressed UIM coverage in N.J.S.A. 17:28-1.1 for the first time in a 1983 amendment. L. 1983, c. 65, § 5. It enacted the first version of N.J.S.A. 17:28-1.1(b), providing in part that UIM coverage as well as UM coverage up to limits specified in the statute "shall be provided as an option by an insurer to the named insured." Ibid. The Legislature defined UIM coverage, "for the purposes of this section," to mean "insurance for damages because of bodily injury and property damage resulting from an accident arising out of the ownership, maintenance, or use of an underinsured motor vehicle." Ibid.

In another enactment later in 1983, the Legislature amended N.J.S.A. 17:28-1.1(a) and (b), added N.J.S.A. 17:28-1.1(c) and (d), which are not

12

directly pertinent to this matter, and created a separate definitional section, N.J.S.A. 17:28-1.1(e), which includes the definition of UIM coverage set forth above. L. 1983, c. 362. The bill's sponsors stated that the law "offers motorists for the first time the option to choose the type of insurance coverage that suits their needs and finances." Sponsors' Statement to A. 3981 (L. 1983, c. 362). The Legislature also amended N.J.S.A. 17:28-1.1 in 1988, 1998, and 2003, to increase mandatory minimum coverage limits and to make minor changes not directly relevant to the instant case. L. 1988, c. 119, § 11; L. 1998, c. 21, § 71; L. 2003, c. 89, § 59.

In 2005, this Court decided Pinto v. New Jersey Manufacturers Insurance Co., 183 N.J. 405 (2005). There, the Court enforced a "step-down" provision in a commercial automobile policy issued by the defendant insurer to the employer of plaintiff Raymond Pinto, Jr. Id. at 412-17.

While driving a truck owned by his employer, Pinto was seriously injured in a collision with an underinsured driver. Id. at 407-08. The employer's commercial motor vehicle insurance policy included an endorsement with a limit of $1,000,000 per accident, which provided UM and UIM coverage for "all sums the insured is legally entitled to recover as compensatory damages from the owner or driver of an uninsured motor vehicle or an underinsured motor vehicle." Id. at 408.

13

The employer's policy, however, had two step-down provisions "that lessened the limit of UM/UIM coverage available in certain circumstances for persons who were not 'named insureds'" under the policy. Ibid. One of those step-down provisions applied if (1) the insured was not the individual named insured under the policy; (2) the insured was an individual named insured under "one or more other policies providing similar coverage;" and (3) "[a]ll such other policies" had "a limit of insurance for similar coverage which is less than the Limit of Insurance for this coverage." Ibid.

The coverage available to Pinto satisfied all the requirements of that step-down clause. Id. at 407-08. Pinto was not a named insured on his employer's policy, but he was a named insured under his personal automobile insurance policy, and that policy provided UIM bodily injury coverage of up to $100,000 per person. Id. at 409.

After receiving $30,000 of the $300,000 limit under the responsible driver's insurance policy, Pinto filed a declaratory judgment action against his insurer, seeking UIM coverage up to the $1,000,000 limit. Id. at 409-10. The trial court denied the insurer's motion for summary judgment. Id. at 410. The Appellate Division reversed, enforcing the step-down provision and limiting Pinto's UIM recovery to $100,000, the UIM limit in his personal automobile

14

policy.  Pinto v. N.J. Mfrs. Ins. Co., 365 N.J. Super. 378, 382-83 (App. Div. 2004).

Pinto appealed, and this Court affirmed the Appellate Division's judgment.  Pinto, 183 N.J. at 412-17.  The Court acknowledged that step-down provisions "may result in differential treatment of similar plaintiffs based on the existence of other available insurance."  Id. at 412.  It concluded, however, that there was nothing "unclear, ambiguous or unfair" about the step-down provisions at issue, and enforced those provisions based on contract law.  Id. at 416-17.

In the wake of this Court's decision in Pinto, the Legislature amended N.J.S.A. 17:28-1.1 to add the provision at the heart of this matter, N.J.S.A. 17:28-1.1(f).  See L. 2007, c. 163, § 1 (eff. Sept. 10, 2007).

The Assembly Committee Statement explained that Senate Bill 1066 -- later enacted as N.J.S.A. 17:28-1.1(f) -- "prohibits the use of 'step-down' provisions in motor vehicle liability policies issued to corporate or business entities to lower uninsured or underinsured motorist coverage for employees to the limits of coverage available to the employees under their personal policies."  A. Fin. Insts. & Ins. Comm. Statement to S. 1666 (May 10, 2007).  The Committee stated the holding of Pinto to be that "as to a motor vehicle liability policy that names a corporate or business entity as a named insured,

step-down provisions which limit uninsured or underinsured motorist coverage for employees of that entity that are not individually named on the policy are valid and enforceable." Ibid. The Committee added that

> [t]his bill reverses the effect of the Pinto decision by prohibiting step-down provisions in these policies. Further, the bill expressly provides that a policy that names a corporate or business entity as a named insured shall be deemed to provide the maximum uninsured or underinsured motorist coverage available under that particular policy to any individual employed by the corporate or business entity, regardless of whether the individual is an additional named insured under that policy, or is a named insured, or is covered under any other policy providing uninsured or underinsured motorist coverage.
>
> [Ibid.]

Seven years later, this Court held in James that N.J.S.A. 17:28-1.1(f) did not "retroactively apply to an accident that preceded the new legislation's effective date." 216 N.J. at 556-57. In its retroactivity analysis, the Court considered the Legislature's intent when it enacted N.J.S.A. 17:28-1.1(f). Id. at 565-69. The Court noted in James that the first sentence of that new subsection stated that a policy in the category described "shall not provide less uninsured or underinsured motorist coverage for an individual employed by the corporate or business entity than the coverage provided to the named insured under the policy." Id. at 565-66 (emphasis removed) (quoting N.J.S.A. 17:28-1.1(f)). The Court held that the "straightforward language" of N.J.S.A. 17:28-

16

1.1(f)'s first sentence "prohibits providing <u>an employee</u> with less coverage than the <u>named insured</u> on a corporate or business entity's commercial automobile liability policy." <u>Id.</u> at 566. The Court added that the subsection's second sentence "further directs what should happen if the corporate or business entity's commercial automobile liability policy has not identified any named insured -- other than the business entity itself -- which was the same situation as existed in <u>Pinto</u>." <u>Ibid.</u>

The Court held that "step-down provisions are not ultra vires as a result of the statute's plain language." <u>Ibid.</u> It reasoned that instead, N.J.S.A. 17:28-1.1(f) "clearly altered how policies containing such provisions would be permitted to operate in respect of employees." <u>Id.</u> at 567. The Court explained the import of N.J.S.A. 17:28-1.1(f):

> The level of UM/UIM coverage for a "named insured" in a policy shall be the same level that is provided to employees of the corporation or business entity by operation of law, as directed through the first sentence of the new legislation. If the corporation or the business entity is the only named insured, then employees of that entity must receive under the commercial policy the maximum available amount of UM/UIM coverage by operation of law, as directed through the second sentence of the new legislation.
>
> [<u>Id.</u> at 568.]

The Court held in <u>James</u> that when N.J.S.A. 17:28-1.1(f) became effective, it "applied to and prospectively reformed, for employees, a

17

corporation's or business entity's motor vehicle liability policy containing UM/UIM step-down provisions, including policies that were in force as of the law's effective date, September 10, 2007." Id. at 574. Therefore, "employees seeking coverage for accidents occurring after the legislation took effect would be covered under reformed policies, as directed by law pursuant to the legislation." Id. at 569. That was not true, however, for accidents that occurred before the legislation took effect: "Thus, an accident to an employee occurring after the effective date of the amendment but before the expiration of the policy period would be treated differently by operation of law than would be an accident that preceded that law's effective date." Id. at 571-72.

After James, the Legislature enacted one more amendment to N.J.S.A. 17:28-1.1. It amended N.J.S.A. 17:28-1.1(a) to mandate UIM coverage at minimum levels and prescribe phased-in increases in UM and UIM minimum coverage under standard automobile policies. L. 2022, c. 87. As the Senate Budget and Appropriations Committee Statement to Senate Bill 481 explained, the bill "requires automobile insurance policies to provide certain minimum amounts of liability, uninsured motorist, and underinsured motorist coverage." S. Budget & Appropriations Comm. Statement to S. 481 (June 27, 2022). In that most recent amendment, however, the Legislature made no change to N.J.S.A. 17:28-1.1(f).

18

IV.

Against that backdrop of statutory and case law, we answer the Third Circuit's certified questions.

A.

In response to the Third Circuit's first certified question, we construe the statutory language, "the maximum . . . underinsured motorist coverage available under the policy" that must be provided to "an individual employed by the corporate or business entity," that appears in N.J.S.A. 17:28-1.1(f)'s second sentence.

When we interpret a statute, "the Legislature's intent is paramount" to our analysis, and "the plain language of the statute is crucial to determining legislative intent." In re Est. of Jones, 259 N.J. 584, 595 (2025) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)); accord W.S. v. Hildreth, 252 N.J. 506, 519 (2023) ("The 'best indicator' of legislative intent 'is the statutory language.'" (quoting State v. Lane, 251 N.J. 506, 518 (2022))). We "ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions so as to give sense to the legislation as a whole." DiProspero, 183 N.J. at 492 (citing Lane v. Holderman, 23 N.J. 304, 313 (1957)). We "do not support interpretations that render statutory language as surplusage." Burgos v. State, 222 N.J. 175, 203 (2015).

19

"When the plain language of a statute is clear and unambiguous, we apply the law as written." Hildreth, 252 N.J. at 518. If the statutory text is ambiguous, "we may turn to extrinsic evidence including legislative history to aid our inquiry." Ibid. (citing DiProspero, 183 N.J. at 492-93; Marino v. Marino, 200 N.J. 315, 329 (2009)).

We construe N.J.S.A. 17:28-1.1(f) in tandem with N.J.S.A. 17:28-1.1(a) and (b), which prescribe general requirements for UIM coverage in standard motor vehicle liability policies. N.J.S.A. 17:28-1.1(a) mandates that such policies provide UIM coverage and requires that coverage meet statutory minimums. And N.J.S.A. 17:28-1.1(b) requires an insurer to offer UIM coverage, "as an option by an insurer to the named insured electing a standard automobile insurance policy, up to at least" the specific limits set forth in that provision. But there is an upper limit to the UIM coverage that may be offered and purchased: "the limits for . . . underinsured motorist coverage shall not exceed the insured's motor vehicle liability policy limits for bodily injury and property damage, respectively." N.J.S.A. 17:28-1.1(b).

Considered together, N.J.S.A. 17:28-1.1(a) and (b) clearly reveal legislative intent in two important respects. First, the Legislature intended that insurers offer a range of UIM coverage options to policyholders, who have the opportunity to choose from those options "the type of insurance coverage that

20

suits their needs and finances." Sponsors' Statement to A. 3981 (L. 1983, c. 362). Second, the Legislature underscored the distinction between "the insured's motor vehicle liability policy limits for bodily injury and property damage" -- the policy's third-party liability limits -- and the limits on first-party UIM coverage. N.J.S.A. 17:28-1.1(b). Those are separate policy provisions that serve different purposes.

The Legislature could have required insurers to offer -- and commercial policyholders to purchase -- UIM coverage at limits equal to their third-party policy limits for personal injury and property damage. It did not do so. Ibid. It merely prescribed that a policy's first-party UM and UIM limits cannot exceed the policy's third-party liability limits. Ibid.

In the first sentence of N.J.S.A. 17:28-1.1(f), the Legislature acted to ensure parity between the UIM coverage provided to "an individual employed by the corporate or business entity" and the UIM coverage "provided to the named insured under the policy." See James, 216 N.J. at 565-66 (construing the first sentence of N.J.S.A. 17:28-1.1(f) to bar step-down provisions affording employees "less coverage" for UIM than the coverage provided to the named insured on the corporate or business entity's commercial liability policy).

21

Nothing in N.J.S.A. 17:28-1.1(f)'s first sentence suggests that the Legislature intended that UIM coverage limits in a commercial policy equal that policy's third-party liability limits. See N.J.S.A. 17:28-1.1(f); Pinto, 183 N.J. at 408-09, 412-17. To the contrary, N.J.S.A. 17:28-1.1(f) addressed a different category of provision -- a step-down provision tying UIM coverage to the coverage available under other policies -- that the Legislature acted to eliminate. Ibid.

As the Third Circuit noted, the parties to this matter dispute the meaning of N.J.S.A. 17:28-1.1(f)'s second sentence. That sentence states that a policy that "names a corporate or business entity as a named insured" shall be deemed to "provide the maximum [UM or UIM] coverage available under the policy to an individual employed by the corporate or business entity, regardless of whether the individual is an additional named insured under that policy or is a named insured or is covered under any other policy providing [UM or UIM] coverage." N.J.S.A. 17:28-1.1(f).

Chiaccheri invokes the Court's observation in James that "[i]f the corporation or the business entity is the only named insured, then employees of that entity must receive under the commercial policy the maximum available amount of UM/UIM coverage by operation of law, as directed through the second sentence of the new legislation." James, 216 N.J. at 568. According to

Chiaccheri, the phrase the Court used in <u>James</u> -- the "maximum available amount of UM/UIM coverage by operation of law" -- should be read to denote the maximum UIM coverage that the corporate or business entity <u>could have purchased</u> under N.J.S.A. 17:28-1.1(f), not the amount of UIM coverage that the corporate or business entity <u>actually chose</u>. Chiaccheri construes the phrase "[n]otwithstanding the provisions of this section or any law to the contrary" that appears in N.J.S.A. 17:28-1.1(f) to mean that the corporate or business entity's decision to purchase coverage up to a limit lower than the maximum UIM coverage that the statute allows -- as N.J.S.A. 17:28-1.1(b) authorizes it to do -- is nullified by N.J.S.A. 17:28-1.1(f).

We view Chiaccheri's construction of N.J.S.A. 17:28-1.1(f)'s second sentence to contravene the statute's plain language. The Legislature prohibited a policy governed by N.J.S.A. 17:28-1.1(f) from providing "less [UM or UIM] coverage for an individual employed by the corporate or business entity than the coverage provided to the named insured under the policy." N.J.S.A. 17:28-1.1(f). In other words, N.J.S.A. 17:28-1.1(f) mandates parity between the UIM coverage provided to the named insured and the UIM coverage provided to the employee -- not parity between the UIM coverage provided to an employee and the third-party liability coverage limits set forth in the policy. <u>Ibid.</u> The Legislature did not suggest -- let alone state -- that a policy issued to a

23

corporate or business entity must be reformed to provide the named insured's employees the maximum UIM coverage that an insurer is statutorily permitted to <u>offer</u> policyholders as an option.  <u>See</u> <u>ibid.</u>  Instead, the Legislature determined that the UIM limits in the policy should govern, deeming such a policy to "provide the maximum [UM or UIM] coverage <u>available under the policy</u> to an individual employed by the corporate or business entity."  <u>Ibid.</u> (emphasis added).[1]

N.J.S.A. 17:28-1.1(f), in short, does not tie the employee's UIM coverage afforded to a UIM coverage limit that could have been agreed upon in a hypothetical policy, but to the UIM coverage limit that appears in the actual policy issued to the corporate or business entity.  <u>Ibid.</u>

---

[1]  We disagree with Chiaccheri's argument that unless the Court accepts his construction of N.J.S.A. 17:28-1.1(f), that provision's second sentence would be nothing more than "surplusage."  N.J.S.A. 17:28-1.1(f)'s first sentence sets forth the statute's parity requirement and bars commercial automobile insurance policies from providing "less [UM or UIM] coverage for an individual employed by the corporate or business entity than the coverage provided to the named insured under the policy."  N.J.S.A. 17:28-1.1(f).  By virtue of the second sentence, existing policies that would otherwise not comply with the requirements of the first sentence are deemed to provide the coverage that the statute requires to an employee, whether or not the individual is a named insured and whether or not the employee is covered under another policy providing UM/UIM coverage.  <u>Ibid.</u>  N.J.S.A. 17:28-1.1(f)'s two sentences serve the same legislative goal -- to ensure the elimination of step-down provisions such as that enforced in <u>Pinto</u>, and to achieve parity with respect to the UM/UIM coverage provided to named insureds and their employees.  The two sentences further that goal in different ways, however, and neither constitutes surplusage.

24

Nor does the "notwithstanding" clause in N.J.S.A. 17:28-1.1(f)'s first sentence alter the analysis. That clause -- "[n]otwithstanding the provisions of this section or any other law to the contrary" -- does not negate the UIM coverage terms of a policy; instead, it overrides any statute or case law that might conflict with N.J.S.A. 17:28-1.1(f)'s parity requirement.

Accordingly, based on N.J.S.A. 17:28-1.1(f)'s plain language, we hold that the maximum UIM coverage "available under the policy" that must be provided to "an individual employed by the corporate or business entity" is coverage up to the UIM coverage limit that the corporate or business entity selected under the policy for the named insured, not UIM coverage up to the general third-party liability coverage limit under the policy. If the corporate or business entity has purchased UIM coverage that equals the policy's third-party liability limit -- as N.J.S.A. 17:28-1.1(b) allows but does not require -- then the named insured and an employee are both entitled to that higher level of UIM coverage. If the corporate or business entity has purchased a lower level of UIM coverage that complies with N.J.S.A. 17:28-1.1(a)'s mandatory minimums, then the named insured and an employee are both entitled to that lower level of UIM coverage.

Our construction of the statute comports with the Legislature's intent to provide options to insureds with respect to UM/UIM coverage; to eliminate

25

step-down provisions such as the provision at issue in <u>Pinto</u>; and to achieve parity between the UM/UIM coverage available to the named insured and the UIM coverage available to other employees covered by the commercial motor vehicle policy. <u>See</u> <u>Sponsors' Statement to A. 3981</u>; <u>A. Fin. Insts. & Ins. Comm. Statement to S. 1666</u>; <u>see also</u> <u>James</u>, 216 N.J. at 565-66.

B.

We next answer the Third Circuit's second certified question: "Are endorsements limiting underinsured motorist coverage to an amount less than the general third-party liability coverage limit under the same policy in violation of N.J.S.A. 17:28-1.1(f) or otherwise contrary to public policy?"

For the reasons set forth above, we conclude that an endorsement in a motor vehicle liability policy limiting UIM coverage to an amount less than the general third-party liability coverage limit under the same policy does not violate N.J.S.A. 17:28-1.1(f), provided that (1) the UIM coverage available to the employee under the policy meets all applicable requirements of N.J.S.A. 17:28-1.1(a) and (b); and (2) under the endorsement, the UIM coverage available to the named insured and the UIM coverage available to employees are subject to the same limits in accordance with N.J.S.A. 17:28-1.1(f). <u>See</u> N.J.S.A. 17:28-1.1(f); <u>A. Fin. Insts. & Ins. Comm. Statement to S. 1666</u>.

26

Finally, we turn to the question whether endorsements limiting underinsured motorist coverage to an amount less than the general third-party liability coverage limit under the same policy are contrary to public policy.

In certain circumstances, this Court has held insurance policy provisions to be void because they are contrary to New Jersey public policy. See, e.g., Sun Life Assurance Co. of Can. v. Wells Fargo Bank, N.A., 238 N.J. 157, 160, 173-187 (2019) (holding that stranger-originated life insurance policies are void as against public policy); Huggins v. Aquilar, 246 N.J. 75, 89-90 (2021) (voiding on public policy grounds a garage policy provision that excluded liability coverage for an entire class of permissive users).

Statutes and case law are among the sources of public policy that may be relevant to a court's determination. See, e.g., Vitale v. Schering-Plough Corp., 231 N.J. 234, 240 (2017) (holding a contractual provision void as against public policy based on a statute); Maw v. Advanced Clinical Commc'ns, Inc., 179 N.J. 439, 444 (2004) (stating that for purposes of N.J.S.A. 34:19-3(c)(3), a provision of the Conscientious Employment Protection Act, the Legislature's reference "to a 'clear mandate of public policy' conveys a legislative preference for a readily discernable course of action that is recognized to be in the public interest"); Pierce v. Ortho Pharm. Corp., 84 N.J. 58, 72 (1980) (holding, in the setting of a common-law wrongful discharge action, that a

27

court may look to "legislation; administrative rules, regulations or decisions; and judicial decisions" as sources of public policy).

Here, the relevant sources of public policy are the statutory text and legislative history of N.J.S.A. 17:28-1.1. The Legislature acted to provide policyholders the opportunity to purchase "the type of insurance coverage that suits their needs and finances." N.J.S.A. 17:28-1.1(a), (b), (f); Sponsors' Statement to A. 3981 (L. 1983, c. 362). It sought to prohibit step-down provisions, such as the provision in Pinto, that reduce UIM coverage for employees to the limits of coverage available to the employees under their personal policies. N.J.S.A. 17:28-1.1(f); A. Fin. Insts. & Ins. Comm. Statement to S. 1666. And it required that UIM coverage be provided in standard motor vehicle liability policies at mandatory minimum levels. N.J.S.A. 17:28-1.1(a); S. Budget & Appropriations Comm. Statement to S. 481.

We conclude that an endorsement in a motor vehicle liability policy limiting UIM coverage to an amount less than the general third-party liability coverage limit under the same policy does not violate public policy, provided that (1) the UIM coverage available to the employee under the policy meets all applicable requirements of N.J.S.A. 17:28-1.1(a) and (b); and (2) under the endorsement, the UIM coverage available to the named insured and the UIM

28

coverage available to employees are subject to the same limits in accordance with N.J.S.A. 17:28-1.1(f).

## C.

The Legislature has the authority to amend N.J.S.A. 17:28-1.1 to clarify its intent, should it decide to do so.  Johnson v. Wilkerson, 262 N.J. 75, 89 (2025); Bulur v. Off. of Att'y Gen., 261 N.J. 275, 294 (2025).


CHIEF JUSTICE RABNER and JUSTICES PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PATTERSON's opinion.